**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH JANUSZEWSKI,           : | |
|        : | |
|     Plaintiff,         : | |
|        : | |
|    v.           : | **Civil Action No. 10-3794 (MAS) (DEA)** |
|        : | |
| ADVANCE AUTO PARTS, INC.,    : | |
|        : | |
|     Defendant.       : | |
|        : | **MEMORANDUM OPINION** |
|        : | |
| ADVANCE AUTO PARTS, INC.,    : | |
|        : | |
|     Third-Party Plaintiff,    : | |
|        : | |
|    v.           : | |
|        : | |
| DIRECT SOURCE, INC.,      : | |
|        : | |
|     Third-Party Defendant.   : | |

**SHIPP, District Judge**

      This matter comes before the Court upon Third-Party Plaintiff Advance Auto Parts, Inc.'s ("Advance"), motion for summary judgment for breach of contract, breach of warranty and indemnification filed on June 18, 2012. ("Advance's Motion," ECF No. 57.) Third Party Defendant Direct Source, Inc. ("Direct"), responded by filing opposition and a cross motion for summary judgment on June 22, 2012. (Direct's Opp'n and Cross Mot. ("Direct's Motion"), ECF No. 58.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, and good cause shown,

Advance's Motion pursuant to a breach of contract theory is GRANTED[1] and Direct's Motion is DENIED in whole.

## I.      Background

This is a diversity personal injury case filed by Joseph Januszewski ("Plaintiff"), who was hired by Direct to complete installation of IT equipment in Advance's stores pursuant to a Master Services Agreement ("Contract") between Advance and Direct. On September 23, 2008, Plaintiff fell off a ladder while attempting to complete the installation of a laptop and associated wiring and cabling at Advance's Point Pleasant, New Jersey store. (Plaintiff's Compl. ¶ 20, ECF No. 1.) Plaintiff contends that a "foreign substance creat[ed] a slippery surface" which caused his ladder to tip over. (*Id.*) That, in turn, caused Plaintiff to fall to the ground and "sustain serious and severe injuries[.]" (*Id.*)

Advance and Direct entered into the Contract in early November 2007. (Advance's Statement of Undisputed Facts ("Advance's SUF") ¶ 20, ECF No. 57-17.) The Contract consists of three parts: the Master Agreement, a Statement of Work, and a Field Tech Guide ("FTG"). (*Id.* ¶ 21.) Per the terms of the Contract, Direct was to provide Advance with "information technology services." (*Id.* ¶ 20.) Specifically, the Statement of Work for the services in question covered the "installation of laptops and network cables at 3,200 Advance Auto Parts store locations nationwide [the "Project"]." (*Id.* ¶ 28.)

The Contract had several key provisions. Regarding Warranties, the Contract stated that Direct "shall employ skilled, trained and, if required, licensed personnel for the performance of the Services [related to the Contract] and shall perform the Services in a good and workmanlike manner." (Advance's Mot. Ex. 5 ¶ 7(b), ECF No. 57-7.)

---

[1] That finding renders Advance's motions regarding breach of warranty and indemnification moot.

In addition, the Contract contained an Indemnity Provision which stated that the Parties agreed to defend and indemnify the other party for any damages resulting from a personal injury or property damage suit "proximately caused (or with respect to the defense obligations hereunder, alleged to have been proximately caused) by any negligent or intentionally wrongful act or omission on the part of the party from whom indemnity is sought [], its agent or employees." (*Id.* ¶ 14.)

The Contract also contained clauses which required: 1) Direct to Provide workers' compensation insurance for its employees, (*Id.* ¶ 15(a)); 2) Direct to provide general liability insurance with Advance named as a beneficiary, (*Id.* ¶ 15(b-c)); and 3) that Virginia law control the interpretation of the contract, (*Id.* ¶ 17).

The clause requiring Direct to add Advance to a general liability policy stated that Direct:

> Shall provide and maintain insurance from reputable insurance carriers during the Term of the [Contract], as follows: . . . (b) Liability Insurance (excluding automobile liability) written on an "occurrence" basis with a combined single limit of at least $2,000,000 per occurrence and $2,000,000 in the aggregate for bodily injury and property damage in a form providing not less than a standard commercial general liability policy including hazards of operation coverage, broad form property damage liability coverage, products/completed operations coverage and broad form contractual coverage with liability limits to at least the limits in this Section (b). The policy shall name [Advance] as an additional insured party.

(*Id.* ¶ 15(b).) Direct admits that it failed to provide the required workers' compensation or general liability insurance as required by the Contract. (Direct's Br. 21-22.)

Direct, rather than hire technicians to complete the Project as employees, retained an IT-referral company named OnForce, Inc. ("OnForce") to provide self-employed independent contractors. (Direct's Statement of Facts 13 ¶ 9, ECF No. 58.) Plaintiff was one of those self-employed independent contractors retained via OnForce.[2] Direct, in order to complete the Project,

---

[2] OnForce was a party to this case; Direct had sued them via a fourth-party complaint. That fourth-party complaint was dismissed without prejudice per the terms of a settlement agreement entered on January 27, 2012. (ECF No. 47).

supplied Plaintiff with the FTG as well as various cabling and other required equipment. (Advance's SUF ¶¶ 48-50.) As mentioned earlier, on September 23, 2008, Plaintiff was allegedly injured while attempting to complete an installation of IT equipment at one of Advance's stores.

On July 27, 2010, Plaintiff filed a complaint against Advance for the aforementioned alleged personal injuries. On September 16, 2010, Advance filed its answer to Plaintiff's Complaint. (ECF No. 6).

On May 5, 2011, Advance filed a Third Party Complaint against Direct. (Advance's Compl., ECF No. 25.) Those claims fell into three broad categories. First, Advance alleged that Direct breached the Contract when it failed to "fulfill its duties under the [Contract] and [Statement of Work]." (Advance's Compl. ¶ 18.) Second, Advance alleged a breach of warranty, specifically claiming that Direct failed "to hire and employ appropriately trained personnel; fail[ed] to provide required supervision, tools, and equipment; and fail[ed] to provide personnel who would complete the Project work in a workmanlike manner." (*Id.* ¶ 19.) Third, Advance sought indemnity under the terms of the Contract because "Plaintiff's claimed injuries were proximately caused by Direct Source's negligence, breach of contract, breach of warranty, and/or wrongful conduct, and/or the negligence of Direct Source's employees." (*Id.* ¶ 20.) Advance also sought "costs and legal fees incurred by Advance in defense of Plaintiff's claim." (*Id.* ¶ 22.) On July 22, 2011, Direct filed an answer to Advance's Complaint. (ECF No. 30.)

On June 18, 2012, Advance filed a motion for summary judgment which sought findings that: 1) Direct breached the terms of the Contract when it failed to obtain workers' compensation and general liability insurance as required by the Contract and is therefore liable for damages; 2) per the terms of the Contract, Direct must defend and indemnify Advance for any damages which resulted from Direct or Plaintiff's negligence or intentional wrongful acts; and 3) the terms of the Contract be construed pursuant to Virginia Law. (Advance's Mot. ¶¶ 2-4.)

4

On June 22, 2012, Direct filed opposition to Advance's Motion, as well as a cross motion for summary judgment.[3] The opposition asserted that it would be unreasonable to apply Virginia law, that Plaintiff was not the agent of Direct, and that the failure to provide general liability insurance and workers' compensation were not relevant or had not led to damages. Direct's motion for summary judgment sought a finding that any negligence, other than Advance's, was committed by Plaintiff, who it contended was an independent contractor and not under the aegis of Direct. Direct, essentially, sought a finding that Plaintiff's negligence (if any occurred) could not be imputed to it.

## II.   __Legal Standard__

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).

In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242,

---

[3] It must be noted that Direct's Notice of Cross Motion fails to include any numbered paragraphs stating the relief it seeks. This violates Fed. R. Civ. 7(b) and L. Civ. R. 7.1. Moreover, Direct's submissions fail to include a "responsive statement of material facts, addressing each paragraph of movant's statement." That is violation of L. Civ. R. 56.1. Direct did submit a "statement of facts," but it was not wholly responsive to Advance's statement. Normally, that failure to comport with the rules would render Advance's Statement of Material Facts undisputed. In order to resolve this motion, however, there are no material facts in dispute so recourse to the rule is unnecessary. Finally, Direct failed to submit a table of contents with its brief. This is a violation of L. Civ. R. 7.1.

251–52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 "isolate[s] and dispose[s] of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

**III.   <u>Analysis</u>**

Although the Parties spend a great deal of time disputing the terms of the contract, which party was negligent, and the choice of law issues, only one issue in this case requires the Court's attention: Direct's failure to obtain general liability insurance per the terms of the Contract. As explained more fully below, Direct breached the Contract when it failed to add Advance to its general liability insurance. That breach has led, and will lead, to damages incurred on the part of Advance. There is no issue of fact which requires resolution by a jury. As such, Advance's Motion is granted and Direct's Motion is denied.

**A.      The Contract Must be Construed According to Virginia Law**

The express terms of the Contract state that the Contract "shall be deemed to be made under, and shall be construed in accordance with the law of the commonwealth of Virginia . . . ." (Advance's Mot. Ex. 5 ¶ 17.) Direct contends that enforcement of this provision would be unreasonable. [4] That position is untenable.

---

[4] The Parties spend a significant amount of time in their briefs arguing about the extent to which Virginia's contributory negligence doctrine would impact a choice of law analysis. Those arguments would be relevant *if* the Court was required to perform a choice of law analysis between New Jersey and Virginia law regarding Plaintiff's negligence claim. Those disagreements, however, are immaterial to the Court's current analysis regarding Advance's breach of contract claims against Direct and the relevant standard thereto. Disposition of issues related to comparative/contributory negligence are not required in order to dispose of the motions currently before the Court.

Advance contends that the Contract's choice of law provision governs the current dispute. That contention is correct. In a diversity case, federal courts apply the choice of law rules of the forum state. *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941)). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341 (1992). In *Computer Curriculum*, the court turned to § 187(2) of the Restatement (Second) of Conflicts of Laws (1971) ("Restatement") for guidance when determining if a contractual choice of law provision should be enforced. The Restatement provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (1971).

Virginia law has a substantial relationship to one of the Parties and no fundamental policy of New Jersey is violated by use of Virginia law. A "substantial relationship" exists, for example, "where one of the parties is domiciled or has his principal place of business." Restatement (Second) of Conflict of Laws § 187 cmt. f (1971). Here, Advance's corporate headquarters are located in Virginia. (Advance's SUF ¶ 3; Advance's Mot. Ex. 5 ¶ 27.) Virginia, therefore, has a substantial relationship to one of the parties. *See Computer Cirriculum*, 130 N.J. at 342 (holding that a

substantial relationship existed between a state and the defendant corporation who was headquartered there).

Moreover, the elements of a breach of contract claim are functionally the same between the two jurisdictions, thereby indicating that no fundamental policy of New Jersey would be offended by the enforcement of the choice of law provision. In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (Va. 2004). In New Jersey, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). The standards are functionally the same because both are derivations of the default interpretation of the common law. As such, imposition of Virginia law as to the breach of contract claim is not unreasonable and would not be contrary to a fundamental policy of New Jersey.

**B.      Direct's Failure to Obtain General Liability Insurance**

Advance contends that Direct breached the Contract when it failed to obtain general liability insurance in which Advance was a named party. (Advance's Mot. Ex. 7 ¶ 15(b).) Direct has failed to provide any documents or other proof, despite Advance's requests, that demonstrate the required insurance was purchased. (Advance's SUF ¶¶ 15-16.) Moreover, Direct admits in its legal argument that it failed to "add Advance as an additional insured as required by the contract . . . ." (Direct's Opp'n Br. 21.)

This is a classic case of breach of contract. The Court does not find that a genuine issue of material fact exists regarding Direct's legal obligation to name Advance as an insured party under its policy or a standalone policy. Similarly, the Court finds that the existence of the general liability

8

policy would have, as a matter of law, insulated Advance from some level of damages and costs. No reasonable finder of fact could find that Advance, with recourse to a general liability policy as described in the Contract (which calls for a $2,000,000 per occurrence limit), would not have exercised that policy.

The only nuance is the *extent* to which the non-existent policy would have insulated Advance from damages and costs sustained defending Plaintiff's tort action. The Court finds that Advance has sustained, and will continue to sustain, damages, thereby satisfying the damages prong required in order to find a breach of contract at the summary judgment stage of this matter. However, the Court cannot, and need not, determine the amount of the damages at this time. The Court will provide a briefing schedule regarding damages and set the matter down for a proof hearing, if required, at the conclusion of the underlying tort matter.

## IV.    Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Advance's Motion is GRANTED and Direct's Motion is DENIED.[5] An order consistent with this opinion will be entered.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: November 8th, 2012

_____

[5] An extended discussion of Direct's cross motion for summary judgment is not required. The cross motion sought a finding that Direct was not negligent and that Plaintiff was not, as a matter of law, Direct's agent. The issue of Direct's negligence, and the issue of agency, is irrelevant in light of the finding that Direct breached the Contract and Advance has thereby sustained damages.